1

2

3

4                         UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    KIM STEVENSON, et al.,                    Case No. 23-cv-02277-HSG

8                     Plaintiffs,

9           v.                                 **ORDER DENYING MOTIONS TO**
                                               **REMAND**
10   GREG W. BECKER, et al.,
                                               Re: Dkt. Nos. 56, 39
11                    Defendants.

12   STEPHEN ROSSI, et al.,                    Case No. 23-cv-02335-HSG

13                    Plaintiffs,

14          v.

15   GREG W. BECKER, et al.,

16                    Defendants.

17

18          Before the Court are Plaintiffs' two motions to remand in these related cases.  Dkt. No. 56

19   in 23-cv-2277; Dkt No. 39 in 23-cv-2335.  The Court held a hearing, Dkt. Nos. 77, 57, and

20   DENIES the motions.

21   **I.     BACKGROUND**

22          This is a putative class action initially filed in Santa Clara Superior Court.  Dkt. No. 1-2

23   ("Compl.") ¶ 1.[1]  According to the complaint, SVB Financial Group (SVB) was a bank that

24   specialized in accepting deposits from and lending to startup companies, particularly ones based in

25   the Silicon Valley region of the San Francisco Bay Area.  *Id*. ¶ 37.  In 2021, SVB announced that

26

27   _____
     [1] The complaints and motions to remand in both actions are nearly identical and assert the same
28   bases for relief.  To avoid duplicating citations, the Court cites to the complaint and corresponding
     briefing in Case No. 23-cv-2277.

1    it entered into a definitive merger agreement to acquire Boston Private Bank & Trust Company

2    (Boston Private). *Id*. ¶ 48.  Under the terms of the agreement, Boston Private shareholders would

3    receive a specified number of shares of SVB common stock and cash for each Boston Private

4    share they owned. *Id*.  According to Plaintiffs, all the shares of SVB stock were issued and

5    solicited pursuant to Offering Materials that "contained untrue statements of material fact and

6    omitted material facts that were both required by governing regulations and necessary to make the

7    statements made not misleading." *Id*. ¶ 54.  Following the merger, SVB experienced financial

8    trouble and filed for bankruptcy in March 2023.  *Id*. ¶ 163.  Since then, according to Plaintiffs,

9    SVB's stock has "lost substantially all of its value." *Id*.  Plaintiffs filed this action asserting claims

10   for relief under §§11, 12, and 15 of the Securities Act of 1933 against SVB's directors, officers,

11   and auditors (collectively, "Defendants").

12       Defendants removed the case to this Court.  Dkt. No. 1.  Defendants argued that the action

13   is removable under 28 U.S.C. § 1452(a), a statute that authorizes federal court jurisdiction in cases

14   "related to" a pending bankruptcy.  *Id*. at 2.  Plaintiffs now move to remand, arguing that the 1933

15   Securities Act precludes removal.  Mot. at 5.

## II.    LEGAL STANDARD

### A.    Removal in General

18       Section 1441(a) of Title 28 provides that a defendant may remove from state court any

19   action "of which the district courts of the United States have original jurisdiction."  28 U.S.C. §

20   1441(a).  The vast majority of lawsuits "arise under the law that creates the cause of action."

21   *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916); *see also Merrell*

22   *Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986).  Federal district courts "shall have

23   original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the

24   United States." 28 U.S.C. § 1331. The removal statute is strictly construed against removal

25   jurisdiction.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Sygenta Crop Prot. v.*

26   *Henson*, 537 U.S. 28, 32 (2002).  "The strong presumption against removal jurisdiction means that

27   the defendant always has the burden of establishing that removal is proper."  *Gaus*, 980 F.2d at

28   566; *see also Nishimoto v. Federman-Bachrach & Assoc.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990).

United States District Court
Northern District of California

Courts must reject federal jurisdiction if there is any doubt as to the right of removal in the first instance. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996). "However, a plaintiff seeking remand has the burden to prove that an express exception to removal exists." *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008).

### B.   Removal Barred Under the Securities Act of 1933

Section 22(a) of the Securities Act of 1933, codified at 15 U.S.C. 77v(a), provides for concurrent jurisdiction in state and federal courts over alleged violations of the Act:

> The district courts of the United States and the United States courts of any Territory shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts.

*Id*. Additionally, Section 22(a) bars removal of actions that are brought in state court under the Act: "Except as provided in section 77p(c) of this title, no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."

### C.   Removal Permitted under 28 U.S.C. 1452(a)

28 U.S.C 1452(a) permits removal of an action that is "related to" a bankruptcy action under Title 11. Section 1452(a) states:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

*Id*. Section 1334(b) provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

## III.   DISCUSSION

This case requires the Court to assess the interplay between two unambiguous statutes. Plaintiffs argue that remand is warranted because Section 22(a) prohibits removal of actions which were commenced in state court "[i]n no uncertain terms." Mot. at 5. According to Plaintiffs, the lone exception to Section 22(a)'s otherwise absolute prohibition on removal applies to certain class actions based on the statutory or common law of any State. *Id*; 15 U.S.C. § 77p(b)–(c).

United States District Court
Northern District of California

1   Plaintiffs argue that this case does not involve that exception and therefore is not removable.

2   Plaintiffs also contend that remand is warranted because Plaintiffs' claims are not "related to" a

3   bankruptcy proceeding, and that equitable reasons favor remand.  Defendants argue that Section

4   1452(a) authorizes removal of any claim or cause of action that is related to a bankruptcy case, and

5   contend that Plaintiffs' claims fall into that category.  Opp. at 9.  Having considered the parties'

6   arguments, the Court finds that remand is not appropriate.

7       **A.    The Securities Act of 1933 does not prohibit removal under 28 U.S.C. 1452(a)**

8       Courts are divided on whether the removal bar of Section 22(a) trumps Section 1452(a)'s

9   bankruptcy removal provision.  *See Cobalt Partners, LP v. Sunedison, Inc.*, No. C 16-02263-

10  WHA, 2016 WL 4488181, at *5 (N.D. Cal. Aug. 26, 2016) (discussing split in authority).  The

11  Ninth Circuit has yet to consider the issue, and it appears that the Second Circuit is the only court

12  of appeals to address it.  *See California Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 108

13  (2d Cir. 2004) (holding that "generally nonremovable claims brought under the Securities Act of

14  1933 may be removed to federal court if they come within the purview of 28 U.S.C. § 1452(a)").

15      Plaintiffs argue that this Court should not rely on *WorldCom* because it is in conflict with

16  Supreme Court and Ninth Circuit law in two important respects.  First, Plaintiffs argue that

17  *WorldCom* did not, as the Supreme Court and Ninth Circuit require, determine whether there was

18  an irreconcilable conflict between the two statutes.  Plaintiffs contend that the statutes do not

19  conflict, making remand appropriate.  Second, Plaintiffs argue that even if there is an

20  irreconcilable conflict, the Court should not follow *WorldCom* because Section 1452's "general

21  grant of the right of removal . . . does not trump § 22(a)'s *specific* bar to removal."  Mot. at 12.

22      The Court finds the Second Circuit's opinion in *WorldCom* persuasive and adopts its

23  reasoning here.

24      **i.    There is a conflict between the two statutes**

25      According to Plaintiffs, because there is no "irreconcilable conflict" between Section 1452

26  and the Securities Act, this Court must apply the Securities Act's removal bar.  Mot. at 7.

27  Plaintiffs contend that *WorldCom*, and cases that adopted that court's reasoning, incorrectly

28  "presumed [] an irreconcilable conflict" between the two statutes, when no such conflict exits.  *Id.*

4

at 15.  Plaintiffs argue that *Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976), and *Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018), require a court to determine as a threshold matter whether a conflict exists.  Plaintiffs contend that *WorldCom* and cases following it ignored this necessary analytical step.  *See id.* at 8 ("[P]otential or even arguable conflict is not enough; rather, Defendants must establish a 'positive repugnancy' such that there is no plausible alternative interpretation by which the two statutes might 'mutually coexist.'") (quoting *Radzanower*, 426 U.S. at 155); *see also* Dkt. No. 80 ("Hrg. Tr.") at 9:24–10:10 ("[T]here's also a hole, a sort of a threshold omission in the *WorldCom* analysis. Since *Cobalt*, since *WorldCom*, the Supreme Court has reiterated in *Epic v. Lewis* that before you get to the specificity canons and the recency canons and the sort of back and forth of which statute trumps the other, there's a threshold burden to find an irreconcilable conflict.").

The Court disagrees with Plaintiffs' argument for several reasons.  First, Plaintiffs contend that *Epic* created a new and different analytical framework than the one applied by the Second Circuit in *WorldCom*.  At the hearing, Plaintiffs emphasized that *WorldCom* and cases adopting its reasoning came before the *Epic* decision.  According to Plaintiffs, *Epic* changed the landscape. *See* Hrg. Tr. at 15:13–17.  But this argument overreads *Epic*.  The *Epic* Court considered an argument that the National Labor Relations Act (NLRA) impliedly repealed the Federal Arbitration Act (FAA).  The plaintiffs contended that though the FAA would normally require the Court to enforce their arbitration agreement, the NLRA overrode that requirement in their case alleging a violation of federal law.  To support this proposition, Plaintiffs cited a provision of the NLRA which gives employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."  *Epic*, 584 U.S. at 511 (quoting 29 U.S.C. § 157).  Plaintiffs asked the Supreme Court to "infer a clear and manifest congressional command to displace the Arbitration Act and outlaw agreements like theirs."  *Id.*  The Court ruled that because the identified NLRA provision did not "express approval or disapproval of arbitration" or "mention class or collective action procedures," it did not impliedly repeal the FAA.  *Id.*

5

1    The circumstance presented in this case is meaningfully different.  Unlike in *Epic*, the

2    Court need not draw any inferences or add any language to identify the conflict between Section

3    22 and Section 1452.  *Cf. Epic*, 584 U.S. at 510–16.  It is apparent on the face of the statutes: one

4    permits what the other forbids.  *Epic* also reflects the somewhat unique nature of the statutory

5    conflict analysis in the arbitration agreement context.  *See id*. 516 ("In many cases over many

6    years, this Court has heard and rejected efforts to conjure conflicts between the Arbitration Act

7    and other federal statutes. In fact, this Court has rejected *every* such effort to date.").  Finally, *Epic*

8    does not overrule, disagree with, or even mention *WorldCom*.  Cases after *Epic* have followed

9    *WorldCom*.  *See, e.g.*, *Moeller-Bertram v. Gemini Tr. Co., LLC*, No. 23-cv-2027, 2023 WL

10   3451379 (S.D.N.Y. May 15, 2023); *see also Coffey v. Ripple Labs Inc.*, 333 F.Supp.3d 952 (N. D.

11   Cal. 2018) (applying *WorldCom* to hold that the Securities Act's removal bar did not require

12   remand where defendants removed under CAFA based on plaintiffs' state law claims).  And the

13   Court has not found a single case applying *Epic* to find that *WorldCom* failed to apply the

14   analytical framework Plaintiffs claim is now required.  Accordingly, to the extent Plaintiffs assert

15   that *Epic* changed the landscape in a way that is relevant to this case, the Court rejects that

16   position.

17   Moreover, contrary to Plaintiffs' assertion, the *WorldCom* Court devoted an entire section

18   of the opinion to discussing and analyzing the "statutory conflict," detailing the statutory history

19   of both the Securities Act and Section 1452(a).  *See WorldCom*, 368 F.3d at 96.  Beginning with

20   the original Bankruptcy Reform Act of 1978, the Court explained that Section 1452 initially

21   authorized broad removal of bankruptcy claims to federal bankruptcy court.  *Id*.  Citing the

22   legislative history, the Court quoted a Senate Report on the Reform Act explaining that "[t]his

23   broad grant of jurisdiction will enable the bankruptcy courts . . . to dispose of controversies that

24   arise in bankruptcy cases or under the bankruptcy code.  Actions that formerly had to be tried in

25   the State court or in the Federal district court, at great cost and delay to the estate, may now be

26   tried in the bankruptcy court."  *Id*. at 96–97.  Eventually, the Supreme Court concluded that the

27   statute's broad grant of jurisdiction to bankruptcy courts was unconstitutional.  *WorldCom*

28   explained that in response, Congress enacted bankruptcy amendments that led to the current

United States District Court
Northern District of California

1   iteration of Section 1452.   Thus, "although that statute revamped the relationship between Article

2   III judges and Article I bankruptcy judges, it did not materially alter the jurisdictional scheme."

3   *Id*. at 97.

4        *WorldCom* then analyzed the Securities Act of 1933.   The removal bar in that statute was

5   added to the Securities Act in 1998 when Congress enacted the Securities Litigation Uniform

6   Standards Act of 1998 (SLUSA).   *Id*. at 98.   SLUSA was enacted after the Private Securities

7   Litigation Reform Act of 1995 ("PSLRA") was passed to "curtail 'strike suits' —*i.e.,* meritless

8   class actions alleging fraud in the sale of securities."   *Id*.   According to *WorldCom*, SLUSA was

9   passed after it became clear that the PSLRA was ineffective in eliminating strike suits because

10  "plaintiffs were able to avoid its strictures by bringing suit in state rather than federal courts."   *Id*.

11  SLUSA expanded federal jurisdiction over class actions, but "did not in any way alter Section

12  22(a)'s bar on the removal of *individual* Securities Act claims."   *Id*. (emphasis in original).

13       After detailing this statutory background, the *WorldCom* court found a clear conflict

14  between the two statutes: "While the bankruptcy removal statute unambiguously states that any

15  civil action brought by a private party in state court . . .  may be removed to federal court if the

16  action is related to a bankruptcy case, Section 22(a) of the Act states, in equally unambiguous

17  terms, that individual actions under the Act may not be removed from state court."   *Id*.   The Court

18  agrees with this conclusion, and rejects Plaintiffs' argument that the two statutes can be read

19  "harmoniously."   *See* Mot. at 9.   The Court cannot simultaneously give effect to both the removal

20  provision in Section 1452 and the removal bar in the Securities Act.   This conflict is more than the

21  statutes "produc[ing] different results when applied to the same factual situation": instead, the

22  Court inherently cannot "regard each as effective."   *Radzanower*, 426 U.S. at 155.   Because the

23  statutes contain two competing congressional directives, the Court must resolve the conflict to

24  decide which provision controls.

25       **ii.   Both statutes are equally specific**

26       Plaintiffs argue that even if the statutes are in conflict, the Securities Act's more specific

27  removal bar should prevail over Section 1452(a)'s general removal provision.   Mot. at 12.   "It is a

28  basic principle of statutory construction that a statute dealing with a narrow, precise, and specific

1   subject is not submerged by a later enacted statute covering a more generalized spectrum." *Luther*

2   *v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008) (citation omitted).

3   "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified

4   by a general one, regardless of the priority of enactment." *Radzanower*, 426 U.S. at 153 (citation

5   omitted).  On this point, Plaintiffs argue that *WorldCom* is in tension with the Ninth Circuit's

6   opinion in *Luther*, which held that the Securities Act's removal bar trumped the right of removal

7   in the Class Action Fairness Act (CAFA) because the Securities Act is "the more specific statute."

8   533 F.3d 1031.  Plaintiffs contend that *WorldCom* did not follow this principle of statutory

9   interpretation, making its reasoning and outcome inconsistent with circuit precedent that is binding

10  on this Court.  Mot. at 13.

11          The Court disagrees that the Ninth Circuit's holding in *Luther* compels the conclusion that

12  Section 1452's removal provision is more general than Section 22(a)'s removal bar, and is thus

13  subsumed by it.  In *Luther*, the Court considered CAFA, but obvious differences between that

14  statute and Section 1452 make this case distinguishable.  This point is underscored by the *Luther*

15  procedural history: after the Ninth Circuit ruled that Defendants could not remove under CAFA,

16  they decided to remove under Section 1452(a).  *Luther v. Countrywide Home Loans Servicing LP*,

17  No. 12-CV-5125MRP, 2012 WL 12888836, at *2 (C.D. Cal. Sept. 4, 2012).  Plaintiffs again

18  moved to remand on similar grounds, but the district court denied that motion, holding that "[t]he

19  Ninth Circuit's decision in *Luther* is not controlling" because "this case involves the bankruptcy

20  removal statute rather than the Class Action Fairness Act."  *Id*.  The Ninth Circuit's ruling that

21  Section 22(a) was more specific than the removal provision in CAFA simply does not support the

22  conclusion that Section 22(a) likewise trumps Section 1452(a).  *See Cobalt*, 2016 WL 4488181 at

23  *6 ("The fact that our court of appeals concluded that Section 22(a) trumped the removal

24  provisions in CAFA does not mandate the conclusion that Section 22(a) also trumps Section

25  1452(a). [T]he removal provisions in CAFA and Section 1452(a) are different and exist within

26  different statutory frameworks."); *see also Fed. Home Loan Bank of San Francisco v. Deutsche*

27  *Bank Secs., Inc.*, No. 10-3038, 2010 WL 5394742 at *6 (N.D. Cal. Dec. 20, 2010) ("However, the

28  Ninth Circuit's holding in *Luther* is of little relevance here, where the issue is whether section

8

United States District Court
Northern District of California

1   22(a) trumps the Court's related-to bankruptcy jurisdiction.").

2       The Court again finds *WorldCom*'s reasoning persuasive: because both statutes apply to a

3   "defined class of claims," the Supreme Court's distinction between "a statute applicable to a

4   'broad universe of potential defendants' and a statute that protects a 'particularized' group of

5   defendants, carries no weight here." *WorldCom*, 368 F.3d at 102 (applying the Supreme Court's

6   statutory conflict analysis from *Radzanower* to find the bankruptcy removal provision and the

7   Securities Act's removal bar equally specific).   And many claims are removable under Section

8   1452 that are not related to the Securities Act of 1933, and many claims unrelated to bankruptcy

9   are not removable because of Section 22(a).  *Id.*

10      The Court thus concludes that Section 22(a) does not bar removal of actions "related to" a

11  bankruptcy action under Section 1452(a).

12      **B.    Plaintiffs' claims are "related to" a bankruptcy proceeding**

13      Plaintiffs also argue that this action is not "related to" the SVB bankruptcy and that the

14  Court accordingly lacks jurisdiction over the claims.  Mot. At 15.  Like several other circuits, the

15  Ninth Circuit has adopted the Third Circuit's test in determining when a case is "related to" a

16  bankruptcy action so as to support removal under Section 1452(a).   Under this standard, a suit is

17  "related to" a bankruptcy action if "the outcome of the proceeding could conceivably have any

18  effect on the estate being administered in bankruptcy."  *In re Fietz*, 852 F.2d 455, 457 (9th Cir.

19  1988) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).  The proceeding need

20  not necessarily be against the debtor or against the debtor's property.  Instead, an action is related

21  to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of

22  action (either positively or negatively), and in any way impacts the handling and administration of

23  the bankrupt estate.  *Id.*

24      Defendants assert four bases for "related to" jurisdiction: (1) defense costs will be paid out

25  of the Defendants' policies, which provide coverage in some circumstances to the debtor in

26  bankruptcy, such that the Bankruptcy Court has imposed reporting and additional approval

27  requirements; (2) discovery relating to the same allegations in the Removed Actions is already

28  occurring in the Bankruptcy Case; (3)  Defendants have a right to indemnification from the debtor

9

SVB; and (4) Defendants also have a right to contribution from SVB. Opp. at 16. Plaintiffs

contend that Defendants' arguments depend on a "host of uncertain findings" that are

"unsubstantiated" and insufficient to establish "related to" jurisdiction. Mot. at 16.

The Court disagrees. Numerous courts in the Ninth Circuit have concluded that a case is

"related to" a bankruptcy action where there is an indemnification agreement between the

defendant in the case and a bankruptcy debtor, even if the defendant is not guaranteed

indemnification. *See Stitching Pensionenfonds ABP v. Countrywide Fin. Corp.*, 447 B.R. 302, 310

(C.D. Cal. 2010) (collecting cases). Here, SVB's Bylaws entitle Defendants to "to advancement

of and indemnification for attorneys' fees and costs." Opp. at 19. Based on this potential for

indemnification, the outcome in this case "could conceivably have an[] effect on the estate being

administered in bankruptcy." *In re Fietz*, 852 F.2d at 457. Moreover, in the corresponding

bankruptcy case, the Bankruptcy Court ordered Defendants to provide quarterly reporting of

expenses paid under the Policies and required them to seek court approval before using proceeds

to pay any settlement or judgment. *In Re SVB Fin. Group*, 650 B.R. 790, 802 (Bankr. S.D.N.Y.

2023). Any favorable result for Defendants in this case likely will affect Defendants and their

ability to pay outstanding financial obligations. *See In re Fietz*, 852 F.2d at 457. Accordingly, the

Court concludes that it has "related to" jurisdiction.

## C.  Equity does not favor remand

The Court's finding of "related to" jurisdiction does not end the inquiry, because under

Section 1452(b), the Court may remand a removed claim based on "any equitable ground."

Plaintiffs argue that even if removal is permitted under Section 1452(a), the Court should remand

on equitable grounds. The Court disagrees that the equities support remand.

"Section 1452 (b) gives courts an unusually broad grant of authority in determining

whether remand is equitable." *Charles Schwab Corp. v. Banc of America Securities,* No. 10–CV–

03489–LHK, 2011 WL 864978 at *7 (N.D. Cal. March 11, 2011) (internal quotation marks and

citations omitted). District courts in this circuit "have typically identified seven factors governing

the decision to remand: (1) the effect of the action on the administration of the bankruptcy estate;

(2) the extent to which issues of state law predominate; (3) the difficulty of applicable state law;

1   (4) comity; (5) the relatedness of the action to the bankruptcy case; (6) any jury trial right; and (7)

2   prejudice to plaintiffs from removal." *Parke v. Cardsystems Solutions,* No. C 06–04857 WHA,

3   2006 WL 2917604, at *4 (N.D. Cal. Oct. 11, 2006) (quoting *Hopkins v. Plant Insulation Co.,* 349

4   B.R. 805, 813 (N.D.Cal.2006)).

5          Plaintiffs allege only federal claims, so there is no risk of issues of state law

6   predominating, or any concern based on the difficulty of applicable state law or the need to respect

7   comity. *See Cobalt,* 2016 WL 4488181 at *7 ("The absence of California claims also weighs

8   against remand. . . . *Omega* and *Glenview* assert claims under Maryland securities law and

9   Maryland and Delaware common law. A California court will be in no better position than a

10  federal court to interpret Maryland and Delaware law. Moreover, federal securities law provides

11  the backbone of the complaints."); *see also Luther,* 2012 WL 12888836, at *5 ("Equitable remand

12  is inappropriate here. The second, third, and fourth factors weigh heavily against remand.

13  Plaintiffs have brought only federal claims in their complaint. Any difficult or unsettled questions

14  will involve federal law."). And despite Plaintiffs' argument to the contrary, the Court finds that

15  the action is related to (and in some ways has already affected) the administration of the

16  bankruptcy estate. Equitable factors do not favor remand under these circumstances.[2]

17  **IV.    CONCLUSION**

18         The Court **DENIES** Plaintiffs' motions to remand. Dkt. No. 56 in 23-cv-2277; Dkt. No.

19  39 in 23-cv-2335. At the hearing, counsel for all parties confirmed that they do not oppose

20  certification of this order for interlocutory appeal. Hrg. Tr. at 5:23–6:13. The Court agrees that

---

[2] After briefing on the motions to remand was complete, Plaintiffs filed an administrative motion
for leave to a submit supplemental materials. *See* Dkt. No. 82. Plaintiffs seek to bolster their
argument that equitable remand is appropriate. Plaintiffs argue that if the case is not remanded,
they will suffer prejudice because in the Federal Securities Action, the court-appointed federal
lead plaintiffs filed a complaint and chose "not to pursue in the federal action claims arising out of
the Boston Private Merger." Dkt. No. 82 at 3. Plaintiffs argue that if their case remains in federal
court, it will be consolidated with that Federal Securities Action, prejudicing them because their
claims have been excluded from that case. The Court **GRANTS** Plaintiffs' motion to supplement
the record, but this additional information does not alter the Court's conclusion. Plaintiffs'
argument has no bearing on the Court's findings that this case asserts only federal claims and is
related to a bankruptcy proceeding. Plaintiffs' argument also rests on the assumption that their
case will be consolidated with the Federal Securities Action if it remains in federal court. The
Court cannot know whether that will be the case, and even if it is, the Court cannot conclude that
such consolidation would substantively preclude their claims.

United States District Court
Northern District of California

the interests of clarity would be best served by definitive guidance from the Ninth Circuit as to the recurring legal question of whether Section 22(a) of the 1933 Securities Act bars removal of even actions "related to" a bankruptcy action pursuant to Section 1452(a).  Given the unanimous view of the Court and the parties on this point, the Court directs the parties to meet and confer and submit a stipulation and proposed certification order briefly addressing the relevant factors under 28 U.S.C. 1292(b) and Ninth Circuit precedent.  *See In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981) (holding that a district court may certify an order for interlocutory appeal if "(1) there [is] a controlling question of law, (2) there [are] substantial grounds for difference of opinion, and (3) [] an immediate appeal may materially advance the ultimate termination of the litigation.").  The Court directs the parties to file this stipulation and proposed order by April 11, 2024 or request more time if needed.

The Court **GRANTS** Plaintiffs' administrative motion for leave to submit supplemental materials.  *See* Dkt. No. 82 in 23-cv-2277; Dkt. No. 58 in 23-cv-2335.

The Court further **SETS** a telephonic case management conference for April 16, 2024 at 2:00pm.  The Court further **DIRECTS** the parties to submit a joint case management statement by April 9, 2024.  All counsel shall use the following dial-in information to access the call:

Dial-in: 888-808-6929

Passcode: 6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.  All attorneys appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the CRD.  The parties should be prepared to discuss how to move this case forward efficiently, including the plan for revisiting the related case determination with Judge Donato.

**IT IS SO ORDERED.**

Dated:   3/28/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge